IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAWN EDMONDS | CRIMINAL ACTION<br>NO. 18-00070 |

**PAPPERT, J.**                                                                                          **December 15, 2020**

### MEMORANDUM

Shawn Edmonds moves for compassionate release. The Court denies the Motion because extraordinary reasons do not warrant Edmonds's release and, in any event, the factors under 18 U.S.C. § 3553(a) counsel against granting relief.

I

A

On August 9, 2018, Edmonds pleaded guilty to five counts of wire fraud and three counts of aggravated identity theft. *See* (Judgment 1, ECF No. 34); (Plea Agreement 1, ECF No. 26). As an army veteran working for the United States Department of Veteran's Affairs ("VA"), for approximately two years he operated, and recruited others to join, a scheme defrauding the VA by authorizing payments of reward money for fictitious claims purportedly on behalf of veterans or their spouses. (Indictment 5–6, ECF No. 1.) Edmonds intended to steal over $800,000 from the VA and his scheme caused the VA to suffer an actual loss of $421,857 in pension benefits. (*Id.* at 43); (Gov't Resp. 1, ECF No. 41). It also "undermined the public's trust in the VA, a critical agency serving the needs of some of our most vulnerable and honorable citizens." (Gov't Resp. 2.)

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Court sentenced

1

Edmonds to an agreed upon term of sixty-six months' incarceration, well below the seventy-five to 135 month advisory guideline range. *See* (Judgment 2, ECF 34); (Plea Agreement 3); (Gov't Sentencing Mem. 3–4, ECF No. 30). Edmonds was also ordered to pay the VA the full amount of $421,857 in restitution. (Judgment 6.) So far, counting accrued good time credit, Edmonds has served approximately thirty months of his sentence. (Gov't Resp. 2.) His current anticipated release date is June 27, 2022. *See* (*id*. at 2).

B

Following the onset of the COVID-19 pandemic, Edmonds petitioned the warden of USP Lewisburg for compassionate release "because of 1. COVID[-]19 pandemic[,] 2. obesity (BMI > 30) [and] 3. other underlying health issues." (Mot. for Release 8, ECF No. 35.) The warden denied the request. (*Id*. at 7.)

Having exhausted his prison remedies, Edmonds now moves *pro se* for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See generally* (*id*.).[1] He argues that the COVID-19 pandemic as well as his obesity, PTSD from military service, rehabilitative efforts and demonstrated adherence to Court instructions during home confinement on pretrial release all serve as extraordinary and compelling reasons for the Court to reduce his sentence to time served. *See* (*id*. at 1–3, 5). He points out that the facility adjacent to his has had numerous COVID-19 cases and claims that his facility is known to have "inadequate medical, safety and living conditions." *See* (*id*. at 4–5); *but see* (Gov't Resp. 8 ("the defendant is presently housed in the minimum-security camp where social distancing and risk mitigation procedures are even more

---

[1]   The Federal Community Defender Office declined to seek compassionate release on Edmonds's behalf. *See* (Order Referring Motion for Release, ECF No. 36); (Letter Declining to Seek Release, ECF No. 39).

feasible than the adjacent maximum security facility where the defendant reports that the prior positive cases occurred")).

Edmonds's medical records confirm he suffers from obesity and PTSD, and the Government concedes that his obesity is a risk factor identified by the CDC that "meets the threshold test of a medical condition" that may present an extraordinary and compelling circumstance warranting compassionate release pursuant to Sentencing Guidelines policy statement § 1B1.13. (*Id.* at 9–37); (Gov't Resp. 12.) But the Government contends Edmonds is not entitled to relief. (Gov't Resp. 13.) Edmonds is in his forties, presents no risk factor other than obesity and his medical conditions are appropriately managed—he has even lost over forty pounds, and his BMI has decreased from 41.8 to 36, during his incarceration. *See* (*id.* at 4, 13).

II

A district court may reduce an inmate's sentence as a form of compassionate release only if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). But before releasing an inmate a court must also "consider[] the factors set forth in section 3553(a)." *Id.* Relevant factors include "the nature and circumstances of the offense" and the need for the sentence "to reflect the seriousness of the offense," provide "just punishment for the offense" and "protect the public from further crimes of the defendant." *Id.* § 3553(a)(1), (2)(A), (C).

Edmonds has not presented extraordinary and compelling reasons for his release. Rehabilitation is "not . . . considered an extraordinary and compelling reason for relief," 28 U.S.C. § 994(t), and Edmonds's behavior during pretrial release is not informative of whether he now deserves a sentence reduction. PTSD is not a COVID-19 risk factor. *See* Coronavirus Disease 2019, *People at Increased Risk*, Center for Disease

Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 14, 2020).

Obesity is a COVID-19 risk factor, but Edmonds's condition is insufficient to justify his release, particularly because he presents no other risk factors and his obesity has improved during his incarceration. *See, e.g.*, *United States v. Williams*, No. 15-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) ("[T]he fact that [defendant] suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, extraordinary reasons justify the reduction of his sentence."); *United States v. Grasha*, --- F. Supp. 3d ----, 2020 WL 5747829, at * (W.D. Pa. Sept. 24, 2020) (obesity and BMI of 48 presented a serious risk but did "not arise to an extraordinary and compelling reason for release."); *United States v.* Whitsell, No. 09-cr-20236, 2020 WL 3639590, at *4 (E.D. Mich. July 6, 2020) ("[O]besity by itself is not sufficient to warrant early release under the compassionate release standard. . . . Other district courts have granted compassionate release only upon a finding of numerous and severe medical conditions that place them at significantly higher risk for severe illness from COVID-19."); *United States v. Votaw*, No. 2:11-cr-00514, 2020 WL 3868468, at *2 (E.D. Cal. July 9, 2020) (BMI of 37.9 insufficient for relief where defendant presented no other serious underlying heath conditions and did not show he was unable to manage his health). And while the Court understands Edmonds's concerns that COVID-19 will spread at his facility, the Bureau of Prisons has recently mitigated the spread of COVID-19 at USP Lewisburg. *See* (Gov't Resp. 8). Although a combination of factors can together establish extraordinary and compelling reasons for compassionate release, Edmonds's panoply of inapposite or otherwise deficient claims do not do so here.

4

5

Even if extraordinary and compelling reasons did exist for Edmonds's release, the 18 U.S.C. § 3353(a) factors counsel against releasing him.  *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming denial of compassionate release for at-risk inmate because "the § 3553(a) factors weigh[ed]" against release).  Edmonds earned his already below-guidelines sentence because he abused his VA position to plunder pension benefits from a population he knows from experience to be particularly vulnerable.  Releasing Edmonds after serving less than half his sentence would be inconsistent with the seriousness of his crimes and fail to provide just punishment for his actions.  *See* 18 U.S.C. § 3553(a)(1), (2)(A).  And the Court cannot say that Edmonds is no longer a danger to the community.  *See id.* § 3553(a)(2)(C).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.